UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

                                        Case No: 14-74450-las

April Beinhauer,

                                        Chapter 7

                    Debtor.

-----------------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

      Marc A. Pergament, as chapter 7 trustee ("Trustee") of the estate of April Beinhauer ("debtor"), filed a motion pursuant to 11 U.S.C. § 707(b)(1)[1] to dismiss the debtor's bankruptcy case as an abuse of the provisions of chapter 7 based upon the "totality of the circumstances" under § 707(b)(3)(B) and requested that the Court order debtor's counsel to reimburse the Trustee for costs, including attorney's fees, in prosecuting the Motion pursuant to § 707(b)(4) (the "Motion"). [Dkt. Nos. 23, 24]. Debtor did not file opposition to that portion of the Motion seeking dismissal of her chapter 7 case. A hearing on the Motion was held by the Court at which the Trustee and debtor's counsel, Shawn R. Kassman, Esq. ("Kassman"), appeared. After careful consideration of the parties' arguments and submissions, the Court granted the Motion to dismiss debtor's bankruptcy case at the conclusion of the hearing. An order dismissing the chapter 7 case was thereafter entered by the Court. [Dkt. No. 32].

      Now, before the Court is the balance of the Motion in which the Trustee seeks costs and attorney's fees incurred in prosecuting the Motion. Having considered carefully the parties' arguments and submissions, the relevant law, and the record in this case, and for

---

[1] All statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and will hereinafter be referred to as "§ (section number)".

the reasons set forth below, the Trustee's request for reimbursement of costs and fees to prosecute the Motion pursuant to § 707(b)(4)(A) is granted.[2]

## II.    Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.  Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b)(2) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

## III.    Background and Procedural History[3]

On September 30, 2014 (the "Petition Date"), debtor filed her petition (the "Petition")[4] for relief under chapter 7 of the Bankruptcy Code.  [Dkt. No. 1].  Debtor retained Kassman as counsel to prepare and file her petition and schedules.  Kassman electronically signed the Petition as "Debtor's Attorney."  Beneath Kassman's signature is the following form language contained in every bankruptcy petition: "In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect."

Along with her Petition, debtor filed, as she is required to do so, the following: (1) Schedules A through J, (2) Statement of Financial Affairs, and (3) a Form 22A Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, all electronically signed

---

[2] The Trustee has not provided the Court with an itemization of his costs and fees.

[3] Unless otherwise noted, the facts are taken from information in the petition and schedules filed by debtor and the pleadings, exhibits, and other papers submitted by the parties in connection with the Motion.

[4] All references to the Petition refer to the petition as a whole, including Schedules, Statement of Financial Affairs, Chapter 7 Statement of Current Monthly Income and Means-Test Calculation and any and all other documents filed as Dkt. No. 1, unless otherwise noted.

by debtor. *Id.*  Schedule I (Income) reflects that, as of the Petition Date, debtor was employed by "PSEGLI," also known as PSE&G Long Island or National Grid, and had a monthly gross income of $6,053.84.  Schedule I also lists "payroll deductions" of $2,358.59, leaving debtor with a monthly income, after payroll deductions, of $3,695.25.  Debtor's payroll deductions include $363.22 for "mandatory contributions for retirement plans," $0 for "voluntary contributions for retirement plans," and $258.31 for "required repayment of retirement fund loans."  [Dkt. No. 1, Schedule I].  On Schedule J (Expenses), debtor listed monthly expenses of $3,934.31.  Subtracting her Schedule J expenses from her Schedule I income, debtor listed a monthly net deficit of $239.06.  [Dkt. No. 1, Schedule J].  Debtor's Schedule B (Personal Property) lists two bank accounts:  (1) a "Checking Account" ending in 2845 with a value of $4,300 (the "Capital One Account")[5]; and (2) an account held at "JP Morgan (*sic*) Chase, 4170 Veterans Memorial Hwy, Bohemia" ending in 8713 with a value of $500 (the "Chase 8713 Account").  [Dkt. No. 1, Schedule B].

On November 5, 2014, debtor was examined by the Trustee at the initial § 341 meeting of creditors, which was subsequently adjourned.  On December 1, 2014, the Court entered an order approving a stipulation between the Trustee and Kassman extending the Trustee's time to object to debtor's discharge pursuant to § 727 through March 6, 2015. [Dkt. Nos. 12, 14].  Thereafter, on February 23, 2015, the Court entered a second order approving a stipulation between the Trustee and Kassman extending the Trustee's time to object to debtor's discharge through April 30, 2015.[6]  [Dkt. No. 22].  In the meantime, debtor provided the Trustee with certain financial records, including bank statements and canceled checks,

---

[5] The account is listed in Schedule B as "Checking Account" followed by the account number ending in 2845; Schedule B does not reflect that this account is maintained at Capital One.  Debtor's February 20, 2015 Affidavit (defined below) references account number 2845 as a Capital One account.

[6] The two stipulations and the orders approving the stipulations referenced an extension of the Trustee's time under § 707 as well as under § 727.

as well as an affidavit dated February 20, 2014[7] sworn to by debtor and notarized by Kassman providing certain information requested by the Trustee (the "February 20, 2015 Affidavit").

The Trustee filed the Motion on April 24, 2015 [Dkt. No. 24] seeking dismissal of debtor's bankruptcy case as an abuse of the provisions of chapter 7 pursuant to §§ 707(b)(1) and (3) based on "the totality of the circumstances." In his Motion, the Trustee alleges, *inter alia,* that the Petition inaccurately reflected debtor's monthly disposable income. Rather than a monthly deficit of $239.06, as set forth in debtor's Schedule J, the Trustee calculated debtor's monthly disposable income as $1,636.21. The Trustee arrived at this higher amount by including as part of debtor's disposable income (i) contributions made monthly to her retirement plan, (ii) the amount applied each month toward repayment of her retirement loan, (iii) contributions received from her husband, a non-debtor[8], and (iv) payments made toward her son's college education expenses. The Trustee asserts that $1,636.21 would be sufficient to pay debtor's general unsecured creditors 100% of their claims under a chapter 13 plan over a period of 30 months. In addition, the Trustee seeks reimbursement of his fees and costs pursuant to §§ 707(b)(4)(A).

Debtor did not oppose the Motion. A hearing on the Motion was held before the Court at which Kassman and the Trustee appeared. At the conclusion of the hearing, the Court dismissed debtor's bankruptcy case and scheduled a further hearing on the Trustee's request for attorneys' fees and costs to give Kassman time to file opposition. Kassman filed opposition. [Dkt. No. 28]. The Trustee replied. [Dkt. No. 33]. The Court held a hearing at

---

[7] Although debtor's affidavit reflects a date of February 20, 2014, the Court will assume that this was a clerical error and that the affidavit was signed on February 20, 2015, as debtor's chapter 7 petition was not filed until September 30, 2014. [Dkt. No. 23, Exhibit D]. The affidavit shall be referenced as the "February 20, 2015 Affidavit" hereinafter.

[8] In the February 20, 2015 Affidavit, debtor states that she married Daniel Sevilla on November 1, 2014 [Dkt. No. 23, Exhibit D, ¶ 2], one month after she filed for bankruptcy on September 30, 2014.

which Kassman and the Trustee appeared.  After oral argument, the Court took the matter under advisement.

In seeking reimbursement of his costs and fees under § 707(b)(4)(A), the Trustee contends that Kassman failed to make a reasonable independent investigation into debtor's income and expenses as reflected on debtor's Schedules I and J in violation of § 707(b)(4)(C). The Trustee asserts that a review of debtor's paystubs and bank statements prior to the filing of the chapter 7 case would have disclosed to Kassman that: (1) debtor's retirement fund contributions and payment of her retirement fund loan are not mandatory; (2) debtor's income is used to pay her son's college tuition and related expenses; and (3) Daniel Sevilla ("Sevilla") contributes $772.51 to debtor's expenses each month.  The Trustee attached the following exhibits to the Motion: (1) the Petition [Dkt. No. 24, Exhibit A]; (2) copies of debtor's pre-petition paystubs reflecting most weekly pay periods from June 2014 through September 13, 2014 [*Id.*, Exhibit B]; (3) copies of canceled checks from the Chase 8713 Account, reflecting payments related to debtor's son's tuition and college expenses [*Id.*, Exhibit C]; and (4) the February 20, 2015 Affidavit [*Id.*, Exhibit D].

In his opposition, Kassman argues that the Trustee is not entitled to any costs or fees in prosecuting the Motion because: (1) Kassman requested information from debtor regarding the nature of her retirement benefit contributions, but debtor did not respond to his inquiries [Dkt. No. 28, Opposition at ¶ 4];  (2) debtor paid her son's college tuition through a joint account funded by debtor's mother and as such it was properly excluded from debtor's Schedule J [*Id.* at ¶ 3];  and (3) debtor did not inform Kassman about her engagement and impending marriage to Sevilla, nor Sevilla's contributions toward her monthly expenses [*Id.* at ¶ 2].  In short, Kassman argues that any alleged errors in debtor's schedules and other documents were due to debtor's lack of response and uncooperativeness, rather than his own actions or inactions, and therefore he did not violate § 707(b)(4)(C) or Bankruptcy Rule 9011.

Additionally, Kassman requests that he be reimbursed $3,500 in legal fees for responding to the Trustee's request for costs and fees and appearing at the hearing.

In his reply, the Trustee provided certain pre- and post-petition bank statements for (1) the Capital One Account [Dkt. No. 33, Reply Affirmation, Exhibit F], (2) the Chase 8713 Account [*Id.*, Exhibit G], and (3) a Chase Uniform Transfers to Minors Act ("UTMA") account ending in 9669 held for debtor's son, Jonathan Scott Beinhauer, and on which debtor is an account custodian [*Id.*, Exhibit H][9]. Although debtor listed a "Checking Account" followed by the account number ending in 2845[10] and the Chase 8713 Account on her Schedule B, the documents attached to the Trustee's reply provide certain information about the accounts that was not disclosed in the Petition.

According to the Trustee, the Capital One Account is a joint account held by debtor and Sevilla. The Chase 8713 Account also appears to be a joint account held by debtor, as "April Perry-Beinhauer," and "Emilie Perry." Neither account was listed as a joint account on Schedule B. In the Trustee's view, even if debtor failed to disclose to Kassman contributions from her then-fiancé, Sevilla, Kassman failed to perform a reasonable investigation to assure debtor's schedules were accurate because bank statements for the Capital One Account show that the account is a joint account held by debtor and Sevilla and reflect regular direct deposits from two different employers. The Trustee alleges that

---

[9] The Court will not consider the Trustee's arguments in the reply with respect to the UTMA 9669 Account as the account was not addressed in the Motion and evidence of the account was provided for the first time in the reply. The Court need not consider a new argument made for the first time in a reply brief. *In re Jensen*, No. 09-14830 (MG), 2010 WL 424693, at *2 (Bankr. S.D.N.Y. Feb. 3, 2010) (citing *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir. 1999)); *Int'l Elecs., Inc. v. Media Syndication Global, Inc.,* No. 02 Civ. 4274 LAK, 2002 WL 1897661, at *3 n.2 (S.D.N.Y. Aug. 17, 2002) ("Arguments first advanced in reply memoranda are not properly considered"). New arguments raised in reply briefs deny the opposing party an opportunity to properly respond to such arguments. *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.,* No. 02-CV-4182 (CSH), 2006 WL 3146422, at *3 (S.D.N.Y. Oct. 30, 2006).

[10] As noted earlier, per debtor's February 20, 2015 Affidavit, the checking account was maintained at Capital One.

Kassman failed to review debtor's bank statements for purposes of confirming the accuracy of her income, and, thus, failed to make a reasonable inquiry as required by § 707(b)(4).

## IV.    Applicable Legal Standards

Section 707(b)(4)(A) provides that:

(A) The court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may order the attorney for the debtor to reimburse the trustee for all reasonable costs in prosecuting a motion filed under section 707(b), including reasonable attorneys' fees, if –
    (i)  a trustee files a motion for dismissal . . . under this subsection; and
    (ii)  the court –
        (I) grants such motion; and
        (II) finds that the action of the attorney for the debtor in filing a case under this chapter violated rule 9011 of the Federal Rules of Bankruptcy Procedure.

11 U.S.C. § 707(b)(4)(A).  *See also Desiderio v. Parikh (In re Parikh),* 508 B.R. 572, 595 (Bankr. E.D.N.Y. 2014).

Bankruptcy Rule 9011(b) reads:

(b) Representations to the Court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances*, -
    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) the allegations and other factual contentions had evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b) (emphasis added).

"The signature of an attorney on a petition . . . shall constitute a certification that the attorney has . . . performed a *reasonable investigation* into the circumstances that gave rise to the petition . . . and determined that the petition . . . is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . ." 11 U.S.C. § 707(b)(4)(C) (emphasis added).  Section 707(b)(4)(D) provides that "[t]he signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge *after an inquiry* that the information in the schedules filed with such petition is incorrect."  11 U.S.C. § 707(b)(4)(D) (emphasis added).

The remedy for failure to comply with subsections 707(b)(4)(C) and (D) is set forth in subsections 707(b)(4)(A) and (B), which provide for the reimbursement of reasonable costs incurred by the trustee and the imposition of an appropriate civil penalty should the court find a violation of Bankruptcy Rule 9011.  *In re Parikh,* 508 B.R. at 585-586 (stating that subsections 707(b)(4)(C) and (D) should be read in conjunction with subsections 707(b)(4)(A) and (B)).  Courts have found an attorney's obligation to perform a reasonable investigation under §§ 707(b)(4)(C) and (D) to be equivalent to the duty under Bankruptcy Rule 9011 to make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all the facts asserted therein.  *Orton v. Hoffman (In re Kayne),* 453 B.R. 372, 381-82 (B.A.P. 9th Cir. 2011); *Lafayette v. Collins (In re Withrow),* 405 B.R. 505, 511 (B.A.P. 1st Cir. 2009); *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013).

"A reasonable investigation by counsel and the accompanying certification are essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon debtors and their counsel providing accurate and complete information in the petition and schedules . . . The need for accurate and complete information is so critical that the failure to conduct a reasonable investigation or inquiry as to the information contained in the petition and schedules may subject the certifying attorney to

not only attorneys' fees and costs, but also sanctions." *In re Hanson,* No. 8-13-73855-las, 2015 WL 891669, at *6 (Bankr. E.D.N.Y. Feb. 27, 2015).

The duty of reasonable inquiry imposed upon an attorney by Rule 9011

> requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check debtor's responses in the petition and schedules to assure they are internally and externally consistent; (4) to demand of debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor.

*In re Robinson,* 198 B.R. 1017, 1024 (Bankr. N.D. Ga. 1996) (citing *In re Matthews*, 154 B.R. 673, 680 (Bankr. W.D. Tex. 1993); *In re Huerta,* 137 B.R. 356, 378 n. 8 (Bankr. C.D. Cal. 1992)).

"Even though it is the debtor and not the attorney that signs the declaration that the schedules are true and correct to the best of the debtor's knowledge, information and belief, by signing the petition, an attorney certifies that he or she has complied with the obligation under § 707(b)(4) in ascertaining whether the information in the schedules is incorrect." *In re Hanson,* 2015 WL 891669, at *4.

Whether an attorney conducted a reasonable investigation or inquiry is determined on a case-by-case basis. *In re Parikh,* 508 B.R. at 585 (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 404 (1990)). "At a minimum, an attorney must make some affirmative investigation into the underlying facts being represented to the court." *In re Hanson*, 2015 WL 891669, at *6. The attorney may not rely solely on information provided by the client nor accept all of the client's assertions at face value. *In re Seare*, 493 B.R. at 211. The attorney must independently verify publicly available facts to determine whether the client's representations are objectively reasonable and investigate further, if any inconsistencies are

raised, by asking questions, obtaining additional documents, or by some other means. *In re Parikh,* 508 B.R. at 585-86; *In re Seare,* 493 B.R. at 211.

"Objectively reasonable" is measured by what a competent attorney admitted to practice before the court would do. *In re Kayne,* 453 B.R. at 382. The court must determine whether a "reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *In re Withrow,* 405 B.R. at 512 (quoting *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir. 1987)). Reasonableness of the inquiry under § 707(b)(4)(C) is examined at the time the petition was filed without the benefit of hindsight. *In re Seare,* 493 B.R. at 211. The court may consider whether the attorney: (i) impressed upon a debtor the critical importance of the accuracy in preparation of any documents to be presented to the court; (ii) sought from a debtor, and then reviewed, whatever documents were within the debtor's possession and control in order to verify the information; and (iii) employed such external verification tools as were available and not time- or cost-prohibitive. *In re Triepke,* No. 09-21855-drd-7, 2012 Bankr. LEXIS 1956, at *14 (Bankr. W.D. Mo. April 12, 2012).

"[The moving party] has the burden of proof on the appropriateness of [Rule 9011] sanctions. Once a prima facie case has been made, the burden shifts to the party from whom the sanction is sought to show a legitimate purpose for the filing." *In re Kliegl Bros. Univ. Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999) (citations omitted).

## V.    Discussion

With this legal framework in mind, the Court must answer two questions to determine the merits of the Trustee's request for reimbursement (1) whether Kassman failed to conduct a reasonable investigation into the circumstances surrounding the Petition and all of the facts asserted therein, and (2) if so, is the Trustee's request for reimbursement of costs and fees appropriate? The Court addresses each question in turn.

1. **Did Kassman Fail to Conduct a Reasonable Investigation?**

   a. *Debtor's Contributions to Retirement Benefits and Repayment of Retirement Fund Loan.*

The Trustee argues that debtor's retirement plan contributions of $363.22, listed as "mandatory" on debtor's Schedule I, were, in actuality, voluntary contributions and thus should have been excluded from the calculation of debtor's disposable income. Further, the Trustee asserts that debtor's monthly payment of $258.31 toward her retirement fund loan was not a "required" payment [Dkt. No. 23, Exhibit B], and as such should not be considered a payroll deduction in calculating her monthly take-home pay. In opposition, Kassman claims that he made "numerous requests" to debtor to furnish documentation regarding her retirement benefits, but his requests went unanswered. Kassman did not provide the Court with any evidence of the alleged emails sent or telephone calls made to debtor. Other than Kassman's assertion that debtor was unresponsive and uncooperative, he offered no other explanation. Substantively, he provided little.

How much current monthly net income, and ultimately disposable income a chapter 7 debtor has after deducting expenses, is critical in determining whether such debtor has the ability to pay a percentage of his or her unsecured debts over time under a chapter 13 plan. *In re Campbell,* No. 11-70038-ast, 2012 Bankr. LEXIS 636, at *19 (Bankr. E.D.N.Y. Feb. 1, 2012). Generally, it would be unfair to allow a debtor to continue to voluntarily commit part of their income to fund their retirement account while paying their creditors less than 100% dividend; therefore, a debtor would not be permitted to exclude voluntary retirement contributions from their disposable income. *In re Blankenship,* 398 B.R. 457, 461 (Bankr. N.D. Ohio 2008). Creditors should not have to, in effect, fund new contributions to a debtor's retirement fund. *In re Haynes,* No. 1-07-BK-009859 RNO, 2008 WL 205223, at *3 (Bankr. M.D. Pa. Jan. 25, 2008). However, the rule is not absolute, and under § 707(b)(3)'s totality of

the circumstances test, courts should perform a case-by-case analysis of all relevant factors. *In re Blankenship,* 398 B.R. at 461.

The obligation to repay a retirement fund loan is essentially an obligation to repay a debt to oneself. *In re Wellington,* No. 11-41711-659, 2012 WL 441260, at *5 (Bankr. E.D. Mo. Feb. 9, 2012). Repayments of loans against retirement accounts do not qualify as other necessary expenses that can be deducted from a debtor's current monthly income. *In re Mowris*, 384 B.R. 235, 238-39 (Bankr. W.D. Mo. 2008).

Neither the Trustee nor debtor have provided evidence sufficient for this Court to find that debtor's contributions to her retirement fund were appropriate in this case or that her retirement fund loan repayments were mandatory or voluntary. However, the lack of evidence before the Court does not excuse Kassman's lack of inquiry. When confronted with the options under which to classify the retirement contributions and loan repayments, Kassman made a choice to list $363.22 as "mandatory contributions for retirement plans" and $258.31 as "required repayments of retirement fund loans." According to his opposition, Kassman only sought further clarification from debtor *after* the information was requested by the Trustee.

Although the Court understands that complications may arise where counsel's client is unresponsive and uncooperative, that is no excuse for a failure to make the requisite inquiry *prior* to the filing of the petition. How could a case be administered if debtors' counsel were only required to inquire into the details of a petition *after* its filing? The answer: it cannot. The time to request such information is before the petition is filed, not after when the trustee has requested documentation and clarification on certain information contained in the petition or revealed by a debtor at the § 341 meeting of creditors. Kassman made a choice to list the contributions as mandatory and the loan repayments as required – a choice that ultimately could have impacted a determination under § 707(b) as to whether debtor's

bankruptcy case should be dismissed. Regardless of whether the contributions were appropriate under the circumstances and the repayments mandatory, Kassman failed to provide any reason as to why this choice was made when at the time he clearly lacked the information necessary to make such a determination as he requested the particulars from debtor post-petition. The Court, therefore, finds that prior to the filing of this chapter 7 case, Kassman failed to perform a reasonable inquiry into the circumstances surrounding debtor's retirement fund contributions and retirement loan repayments.

> *b. Debtor's Payment of her Son's College Tuition and Expenses.*

The Trustee argues that debtor uses part of her income to pay for her adult son's college tuition and related expenses and that these payments were not reflected in the calculations for debtor's monthly income, expenses, and disposable income. Kassman claims that the payments for debtor's son's college tuition were from a joint account funded by debtor's mother, and as such, the payments were not listed on Schedule J. [11] Schedule J specifically provides for "Childcare and children's education costs," under which debtor listed $0.00.

For the purposes of § 707(b), tuition is considered a discretionary expenditure. *In re Godios,* 333 B.R. 644, 647 (Bankr. W.D.N.Y. 2005); *In re Lanza,* 450 B.R. 81, 87 (Bankr. M.D.

---

[11] The Court takes issue with Kassman's unsupported assertion that a joint account that is held by a debtor with a non-debtor and funded by the non-debtor need not be disclosed. "Under New York Bank Law § 675, the establishment of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to the levy of a money judgment by the judgment creditor of one of the joint tenants." *In re Grodetzky,* 495 B.R. 223, 225 (Bankr. E.D.N.Y. 2012). Kassman gives no explanation as to what he relied upon to make this assertion. Further, his claim of an alleged joint account seems to be unfounded based upon the bank statements and canceled checks provided by debtor. The canceled checks from Chase 8713 Account show that the account is held by debtor and Emilie Perry. The Court infers that Emilie Perry is debtor's mother. The transaction summary of the account shows regular deposits from debtor's employer, National Grid. The Court questions how thoroughly Kassman reviewed the documents turned over to the Trustee by debtor. Regardless of the existence of the alleged account or the funding of such account, Kassman's belief that the alleged account need not be disclosed does not relieve him of the responsibility of disclosing the precise nature of all of debtor's assets. *See U.S. Trustee v. Lynn (In re Bellows-Fairchild),* 322 B.R. 675, 681 (Bankr. D. Or. 2005). Kassman owed a duty to debtor and the legal system to accurately and completely prepare debtor's schedules. *Id.*

Pa. 2011) (finding that expenditures for the benefit of persons whom a debtor has no duty to support are not reasonable and necessary expenses and that bankruptcy debtors are responsible for paying their creditors before they make any discretionary expenditures on behalf of their adult children).

The Trustee provided a transaction summary for the Chase 8713 Account, as well as canceled checks. The canceled checks reflect two account holders: (1) April Perry-Beinhauer and (2) Emilie Perry. [Dkt. No. 23, Exhibit C]. The joint nature of the account was not disclosed in debtor's schedules. The canceled checks reflect pre- and post-petition payments to "SCCC Bookstore," "Jonathan Beinhauer," and "Westwood College." *Id.* A transaction summary from the account for the dates of January 1, 2014 through October 31, 2014 reflects regular deposits from National Grid[12], debtor's employer. [Dkt. No. 33, Exhibit G].

The Court also notes that debtor's Schedule F included a $25,242 debt owed to the U.S. Department of Education. Schedule F reflects that the account was opened on April 1, 2013 and last active on August 31, 2014. Based on debtor's paystubs, it is clear that she is employed full-time with National Grid. Kassman knew, or should have known, that debtor held a full-time position. Kassman was also aware that debtor's 20-year-old son lived with her as the Petition lists him as a dependent. Yet it is unclear whether he ever asked debtor if her son contributed to the household expenses or if debtor paid any of her son's expenses. When faced with evidence of debtor's adult son and a student loan obligation, why was a further inquiry not made into debtor and her son's financial arrangements?

Based on his opposition, it seems Kassman did ask debtor about the payment of her son's tuition because he asserts that the payments came from the alleged undisclosed joint

---

[12] Although Debtor lists her employer as "PSEGLI" on Schedule I of the petition, bank statements from all of her accounts reflect deposits originating from National Grid or "Long Island Elec Payroll." Additionally, in her February 20, 2015 affidavit, debtor states her employer is National Grid. [Dkt. No. 23, Exhibit D].

account funded by debtor's mother. Kassman, however, provides no evidence of this alleged account and no explanation as to the basis of his assertion. Questions abound. When did Kassman ask debtor about the payments and the undisclosed joint account? Did Kassman review bank statements of this alleged account? Did the bank statements only reflect deposits from Emilie Perry? Did Kassman solely rely on the word of debtor? The existence of the student loan and debtor's dependent son, which were both disclosed on the Petition, should have prompted a further inquiry by Kassman. A review of debtor's canceled checks and bank statements from the Chase 8713 Account would have shown the regular payments she was making towards her son's tuition and college expenses, which, in turn, would have affected the calculation of debtor's income and expenses.

### c. Contributions from Sevilla.

The Trustee argues that Kassman failed to include contributions from debtor's now-husband, Sevilla, to debtor's monthly expenses in calculating her disposable income. In opposition, Kassman denied any knowledge of Sevilla, debtor's engagement to Sevilla, and the $772.51 monthly contributions Sevilla made toward payment of debtor's expenses. Current monthly income includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor . . ." 11 U.S.C. § 101(10A)(B). Expenses paid by a non-debtor spouse will be considered a household expense. *In re Persaud,* 486 B.R. 251, 262 (Bankr. E.D.N.Y. 2013). "There is no justification for ignoring the impact of a non-petitioning spouse's income on a debtor's financial situation." *Matter of Strong,* 84 B.R. 541, 543 (Bankr. N.D. Ind. 1988) (citing *In re Kern,* 40 B.R. 26 (Bankr S.D.N.Y. 1984)).

Debtor stated in the February 20, 2015 Affidavit that she receives $772.51 from her husband, Sevilla, each month to pay for her $609.00 car payment and a portion of her car insurance. [Dkt. No. 23, Exhibit D]. Debtor's Schedule I does not include debtor's husband's contributions to her monthly net income. Kassman asserts that debtor did not inform him

that she was engaged, nor that she was receiving any funds from Sevilla.  There are two glaring inconsistencies with Kassman's claim that he lacked any knowledge of the existence of debtor's fiancé.  Firstly, debtor lists an engagement ring valued at $1,000 in her Schedule B (Personal Property), and debtor's Schedule C (Property Claimed As Exempt) claims a $1,000 exemption for the engagement ring pursuant to NYCPLR § 5205(a)(6).  Once faced with the knowledge of debtor's possession of an engagement ring, a reasonable attorney would, at the very least, inquire as to the following: (1) debtor's marital status; (2) debtor's household size; and (3) possible contributions from debtor's fiancé or spouse.  Based on his opposition, Kassman did not make any of these inquiries.  What may be more startling is that debtor's February 20, 2015 Affidavit, notarized by Kassman and likely prepared by him after consultation with his client, specifically states that she married Sevilla on November 1, 2014, a month after the filing of her chapter 7 case.  [Dkt. No. 23, Exhibit D, February 20, 2015 Affidavit at ¶ 2].  That information should have prompted Kassman to ask debtor whether Sevilla contributed to the household expenses prior to the Petition Date and, if so, promptly correct the debtor's schedules to reflect the proper calculation of debtor's current monthly income.

Secondly, a basic review of debtor's bank statements for her Capital One Account should have led Kassman to inquire further into debtor's finances.  The bank statements furnished to the Court by the Trustee show that the account is a joint account in the names of debtor and Sevilla with regular deposits from National Grid and "Contract Pharmac"[13] [Dkt. No. 33, Exhibit F].  Further, the bank statements are dated pre- and post-petition.

---

[13] In the February 20, 2015 Affidavit, debtor states that "[t]he funds deposited in the Capital One 2845 are from my employer National Grid and from my husband's employer Contract Pharmac."  [Dkt. No. 23, Exhibit D, ¶ 2].  Debtor also states that "Daniel Sevilla's paycheck provides toward my [sic] funds to pay for Car Insurance and the car payment.  The car payment is $609.00 monthly and the balance is used toward car insurance. Daniel Sevilla's paycheck is $772.51."  [Dkt. No. 23, Exhibit D, ¶ 6].

Kassman never stated that he reviewed debtor's bank statements. Two scenarios are possible. Kassman reviewed the bank statements, but not thoroughly enough, as it should have been immediately clear to him that the account was a joint account into which regular deposits were made from Contract Pharmac. A reasonable attorney under the same circumstances then would have inquired into who the joint account owner was in relation to debtor, whether debtor lived with the joint account owner, and whether the joint account owner contributed to debtor's monthly expenses. If Kassman reviewed the Capital One Account bank statements, yet failed to inquire further into contributions from Sevilla and the Contract Pharmac deposits, he did not conduct a reasonable investigation into debtor's income and expenses. Alternatively, Kassman did not review the bank statements and simply accepted debtor's calculations of her income and expenses without seeking any further information from debtor to verify her calculations. This certainly cannot be considered a reasonable inquiry. Kassman failed to conduct a reasonable investigation into debtor's Capital One bank account and contributions debtor received from Sevilla.

   *d. Chapter 7 Statement of Current Monthly Income and Means-Test Calculation.*

Upon review of the Petition, the Court finds it important to note other apparent deficiencies, which may further reflect upon Kassman's lack of reasonable inquiry into the circumstances surrounding the Petition. Firstly, on the Form 22A Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test"), debtor checked-off a box reflecting that "[a]ccording to the information required to be entered on this statement, the presumption [of abuse] does not arise." Only *four* of the 57 sections on Means Test are completed. The first line of the Means Test reads: "In additional to Schedules I and J, this statement must be completed by every individual chapter 7 debtor." Section 2 (Marital/filing status) is completed. Debtor checked off "unmarried." Section 14 (Applicable median family income) reflects the median income for a household of one in New York. The Court notes that

this is inconsistent with debtor's statement on Schedule J that her 20-year-old dependent son lives with her.  In section 15 (Application of Section 707(b)(7)), debtor checked the box that reads: "The amount on Line 13 is less than or equal to the amount on Line 14."  Section 13 is left blank, and, as discussed, section 14 is inaccurate.  Lastly, section 57 contains debtor's electronic signature dated September 30, 2014 with the following: "I declare under penalty of perjury that the information provided in this statement is true and correct."

The Court is left to guess as to why only four sections of the Means Test are completed, why at least two of the four are inaccurate, why Kassman filed this form in its current state and had debtor electronically sign off on it, and how a determination was made that the presumption of abuse did not arise when the form was incomplete.  No amendments were ever made to the Petition.  The Court cannot condone incomplete and inaccurate filings.

> e.  *Reasonableness of Inquiry at the Time of the Filing of the Petition.*

In opposition to the Trustee's request for costs and fees and in his motion to withdraw as counsel to the debtor [Dkt. No. 29][14], Kassman repeatedly notes that debtor did not respond to numerous phone calls and "numerous emails in regard to the post-341 meeting of creditors in regard to motion for dismissal." [Dkt. No. 29, ¶ 4].  Again, the reasonableness of the inquiry under § 707(b)(4)(C) is examined at the time the petition was filed, not after. However, the Court will address the inconsistencies in Kassman's argument.  The 341 meeting was conducted on November 5, 2014 and was subsequently adjourned.  At some point between November 5, 2014 and February 20, 2015, Kassman became aware of the contents of the February 20, 2015 Affidavit, which included information about debtor's marriage,

---

[14] The Court has taken judicial notice of the contents of the docket in this bankruptcy case.  *Teamsters Nat'l Freight Indus. Negotiating Comm. v. Howard's Express, Inc.*, 151 Fed. App'x 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case).

deposits from Sevilla into the Capital One Account, and the existence of the undisclosed UTMA 9669 Account. Although Kassman would have the Court believe that debtor provided little to no information with respect to the inquiries he and the Trustee made, the existence of the February 20, 2015 Affidavit simply refutes this. Further, the Trustee's submission of paystubs, canceled checks, and bank statements provided by debtor also contradicts, in part, Kassman's tale of an uncooperative, non-responsive client.

Most importantly, Kassman "cannot absolve himself of the duty to conduct a reasonable investigation [under § 707(b)(4)(C)] by affirmatively allowing clients to bring in only the bare minimum of information and then claiming that it is not his fault that he did not have sufficient information to review." *In re Moffett,* No. 10-71920, 2012 WL 693362, at *3 (Bankr. C.D. Ill. Mar. 2, 2012). Based on the opposition, Kassman seeks to place the blame on his client for the information not disclosed on the Petition. "An attorney cannot place the entire burden on the clients to provide information." *In re Cuomo,* No. BK-S-10-14813-BAM, 2013 WL 3155425, at *14 (Bankr. D. Nev. June 20, 2013), *aff'd,* No. ADV 12-01124, 2014 WL 5358180 (B.A.P. 9th Cir. Oct. 21, 2014).

> One of the most important duties of the debtor's attorney [is] preparing the debtor's schedules and statement of affairs . . . In the preparation of the schedules nothing should be taken for granted. The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules. Although, depending on the sophistication of the debtor, it may be possible to have the debtor, especially a business debtor, prepare a first draft of the schedules, the attorney for the debtor has a responsibility to review those schedules to ensure that they are complete and in compliance with the Code and the Federal Rules of Bankruptcy Procedure.

Collier on Bankruptcy, 521.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

"Rule 9011, now enhanced by the BAPCPA additions to the Code, evinces a policy that a debtor's attorney exercise independent diligence and care in ensuring that there is

evidentiary support for the information contained in his client's bankruptcy schedules." *In re Kayne*, 453 B.R. at 385 (citing *In re Dean,* 401 B.R. 917, 924 (Bankr. D. Idaho 2008)).

Based on the foregoing, the Trustee has met his burden of showing that Kassman did not file the Petition after a reasonable investigation into the circumstances surrounding the Petition.   Kassman, on the other hand, has not met his burden of showing a legitimate purpose for the filing, despite ample opportunity to do so.   Aside from his brief opposition, Kassman did not offer any evidence to support his position that he undertook a reasonable investigation prior to the filing of the Petition and that reimbursement of the Trustee's costs and fees in prosecuting the Motion are not warranted.   Kassman did not furnish to the Court any copies of the alleged emails and letters he sent to debtor to clarify her financial position. Kassman did not provide the Court with any information regarding his firm's bankruptcy in-take procedures or the processes in drafting debtor's petition.   Kassman did not present any evidence of the documentation he received from debtor in order to draft the petition.   Nor does Kassman state that he ever personally met with debtor to discuss the petition and schedules and answer any questions she may have relative to the information contained therein. Further, there is no indication from Kassman that he sought documents from debtor regarding her finances while drafting the petition and schedules.   The Court is only left to guess as to how Kassman drafted the petition and schedules and what information Kassman did or did not examine prior to the filing of the Petition.   Kassman's failure to conduct a reasonable investigation or inquiry into debtor's finances in connection with the Petition caused the Trustee to invest time and resources in examining debtor's bankruptcy filing. Debtor's alleged lack of post-petition cooperation does not absolve Kassman of his prepetition duties as debtor's counsel.

Because the record is clear that Kassman failed to perform a reasonable investigation into the circumstances that gave rise to the Petition, he has violated § 707(b)(4) and

Bankruptcy Rule 9011(b).  Having so concluded, the Court must now decide whether to order Kassman to reimburse the Trustee for the costs and fees in prosecuting the Motion.

### 2. Whether Reimbursement of the Trustee's Costs and Fees Is Appropriate in this Case?

Because the Court has determined that Kassman failed to carefully investigate the affairs of the debtor and assure that he possessed the information necessary to prepare a complete and accurate petition and schedules, the Court, in the exercise of its discretion, orders Kassman to reimburse the Trustee for the reasonable costs in prosecuting the Motion, including reasonable attorneys' fees.

## VI.    Conclusion

The Court finds that the Trustee is entitled to reimbursement for costs and fees associated with the prosecution of the Motion pursuant to § 707(b)(4).  The Trustee shall submit an itemization of costs and fees within 30 days of entry of this Memorandum Opinion and Order.  Kassman shall have 14 days thereafter to file any objection to that itemization. The Court will issue a separate order scheduling a hearing on the requested costs and fees.

**SO ORDERED.**

**Dated: April 13, 2017**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**